1  WRIGHT, FINLAY & ZAK, LLP
2  T. Robert Finlay, Esq., SBN 167280
   Nichole Glowin, Esq. SBN 262932
3  Yelena Cayton, Esq., SBN 258380
4  4665 MacArthur Court, Suite 200
   Newport Beach, CA 92660
5  Tel. (949) 477-5050; Fax (949) 477-9200
6  nhood@wrightlegal.net; hcayton@wrightlegal.net

7
8  Attorneys for Defendants, WELLS FARGO BANK, NATIONAL
   ASSOCIATION SUCCESSOR BY MERGER TO WELLS FARGO BANK
9  MINNESOTA, NATIONAL ASSOCIATION, AS TRUSTEE FOR GSAMP
   TRUST 2003-HE2, MORTGAGE PASSTHROUGH CERTIFICATES, SERIES
10 2003-HE2; OCWEN LOAN SERVICING, LLC; MORTGAGE ELECTRONIC
11 REGISTRATION SYSTEMS, INC.; VANESSA LEWIS; and TOBIAS
   BRYANT
12
13              **IN THE UNITED STATES BANKRUPTCY COURT**
14            **FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

15 | In Re: | Adversary Case No.: 15-90176-LA |
16 | SUSAN L. BOURGEOIS | Bankruptcy Case No.: 12-16096-LA |
   |  |  |
17 | SUSAN L. BOURGEOUS, an individual, | *Hon. Louise DeCarl Adler* |
18 |  |  |
19 | Plaintiff, | **REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO** |
   | vs. | **DISMISS ADVERSARY** |
20 | WELLS FARGO BANK, NATIONAL | **COMPLAINT AND MOTION TO** |
21 | ASSOCIATION SUCCESSOR BY | **STRIKE PORTIONS THEREOF** |
   | MERGER TO WELLS FARGO BANK |  |
22 | MINNESOTA, NATIONAL |  |
23 | ASSOCIATION, AS TRUSTEE FOR | Date: December 17, 2015 |
   | GSAMP TRUST 2003-HE2, | Time: 2:00 p.m. |
24 | MORTGAGE PASSTHROUGH | Dept.: 2 |
25 | CERTIFICATES, SERIES 2003-HE2, a | Room: 18 |
   | corporation, et al., | [Filed concurrently with Motion to |
26 | Defendants. | Dismiss and Motion to Strike] |
27 |  |  |
28 |  | Complaint filed: September 18, 2015 |

-1-

**TO THE HONORABLE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD, IF ANY:**

**PLEASE TAKE NOTICE** that Defendants WELLS FARGO BANK, NATIONAL ASSOCIATION, SUCCESSOR BY MERGER TO WELLS FARGO BANK MINNESOTA, NATIONAL ASSOCIATION, AS TRUSTEE FOR GSAMP TRUST 2003-HE2, MORTGAGE PASSTHROUGH CERTIFICATES, SERIES 2003-HE2 ("Wells Fargo"); OCWEN LOAN SERVICING, LLC ("Ocwen"); MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"); VANESSA LEWIS ("Lewis") and TOBIAS BRYANT ("Bryant") (collectively, "Defendants"), requests, pursuant to *Federal Rules of Evidence* ("FRE"), *Rule 201*, that the Court take judicial notice of the following documents in connection with its Motion to Dismiss Plaintiff  SUSAN L. BOURGEOIS ("Plaintiff")  Adversary Complaint filed concurrently herewith:

1.     Note dated April 17, 2003, a true and correct copy of which is attached hereto as Exhibit "1."

2.     A Deed of Trust recorded on April 30, 2003, in the San Diego County Recorder's Office, bearing instrument number 2003-0504618 , a true and correct copy of which is attached hereto as Exhibit "2."

3.     A Corporate Assignment of Deed of Trust recorded on  October 17, 2015 , in the San Diego County Recorder's Office, bearing instrument number 2011-0544788, a true and correct copy of which is attached hereto as Exhibit "3."

4.     A Notice of Default and Election to Sell Under Deed of Trust recorded on July 27, 2012, in the San Diego County Recorder's Office, bearing instrument number 2012-0437124, a true and correct copy of which is attached hereto as Exhibit "4."

///

-2-

**REQUEST FOR JUDICIAL NOTICE**

1        5.    A Civil Docket for Case No. 3:15-cv-01655-GPC-BLM, a true and

2    correct copy of which is attached hereto as Exhibit "5."

3

4        Respectfully submitted,

5        **WRIGHT, FINLAY & ZAK, LLP**

6

7    Dated:  November 4, 2015    By:    */s/ Nichole Glowin, Esq.*

8        Nichole Glowin, Esq.

    Yelena Cayton, Esq.

9        Attorneys for Defendants

10       WELLS FARGO BANK,

    NATIONAL ASSOCIATION

11       SUCCESSOR BY MERGER TO

12       WELLS FARGO BANK

    MINNESOTA, NATIONAL

13       ASSOCIATION, AS TRUSTEE FOR

14       GSAMP TRUST 2003-HE2,

    MORTGAGE PASSTHROUGH

15       CERTIFICATES, SERIES 2003-

16       HE2; OCWEN LOAN SERVICING,

    LLC; MORTGAGE ELECTRONIC

17       REGISTRATION SYSTEMS, INC.;

18       VANESSA LEWIS; and TOBIAS

19       BRYANT

20

21

22

23

24

25

26

27

28

**REQUEST FOR JUDICIAL NOTICE**

## PROOF OF SERVICE

I, Gretchen Grant, declare as follows:

I am employed in the County of Orange, State of California. I am over the age of eighteen (18) and not a party to the within action. My business address is 4665 MacArthur Court, Suite 200, Newport Beach, California 92660. I am readily familiar with the practices of Wright, Finlay & Zak, LLP, for collection and processing of correspondence for mailing with the United States Postal Service. Such correspondence is deposited with the United States Postal Service the same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

On November 4, 2015, I served the within **REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO DISMISS ADVERSARY COMPLAINT** on all interested parties in this action as follows:

[X]    by placing [ ] the original [X] a true copy thereof enclosed in sealed envelope(s) addressed as follows:

**SEE ATTACHED SERVICE LIST**

[ ]    (BY MAIL SERVICE) I placed such envelope(s) for collection to be mailed on this date following ordinary business practices.

[X]    (CM/ECF Electronic Filing) I caused the above document(s) to be transmitted to the office(s) of the addressee(s) listed by electronic mail at the e-mail address(es) set forth above pursuant to Fed.R.Civ.P.5(b)(2)(E). "A Notice of Electronic Filing (NEF) is generated automatically by the ECF system upon completion of an electronic filing. The NEF, when e-mailed to the e-mail address of record in the case, shall constitute the proof of service as required by Fed.R.Civ.P.5(b)(2)(E). A copy of the NEF shall be attached to any document served in the traditional manner upon any party appearing pro se."

[X]    (Federal) I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on November 4, 2015, at Newport Beach, California.

_____
Gretchen Grant

## SERVICE LIST

Shawn P.K. Huston
Hutson McCaffrey, LLP
2171 Ulric Street, Suite 205
San Diego, CA 92111
shawnh@hustonmccaffrey.com
*Attorney for Plaintiff, Susan L. Bourgeois*

**PROOF OF SERVICE**

EXHIBIT "1"



# NOTE

April 17, 2003                    EL CAJON                                    CA
    [Date]                                    [City]                                          [State]

1280 SHARI WAY
EL CAJON, CA  92019
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 150,000.00        (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is Accredited Home Lenders, Inc., A California Corporation

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of        7.490 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1st        day of each month beginning on June 01, 2003          . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on May 01 2033          , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at                 P.O. Box 502480 San Diego, CA  92150-2480
                                                                                       or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments    - Prepayment Charge Rider attached hereto

My monthly payment will be in the amount of U.S. $ 1,047.80          .

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

MIN# 100176103040725077                                                                0304072507

**MULTISTATE FIXED RATE NOTE**-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

-6N (0207).01                    Form 3200 1/01
VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 3                            Initials:

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 6.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

0304072507

BOURGEOIS                    0304072507

LAND-5N (02071.01            Page 2 of 3

Form 3200 1/01
Initials:

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)　　　　_____ (Seal)
SUSAN L. BOURGEOIS　　　　-Borrower　　　　CLIFFORD J. BOURGEOIS　　　　-Borrower

_____ (Seal)　　　　_____ (Seal)
　　　　-Borrower　　　　　　　　-Borrower

_____ (Seal)　　　　_____ (Seal)
　　　　-Borrower　　　　　　　　-Borrower

_____ (Seal)　　　　_____ (Seal)
　　　　-Borrower　　　　　　　　-Borrower

*[Sign Original Only]*

BOURGEOIS　　　　　　　　　　　　0304072507

Loan No:   0304072507

Mortgagee: SUSAN L. BOURGEOIS and CLIFFORD J. BOURGEOIS


Address:    1280 SHARI WAY
            EL CAJON, CA 92019

Loan Amount:$ 150,000.00

# ALLONGE TO NOTE


PAY TO THE ORDER OF:

WITHOUT RECOURSE

Melinda Enders
Assistant Secretary
Accredited Home Lenders, Inc., A California Corporation

620017.uff              BOURGEOIS          0304072507

# PREPAYMENT CHARGE RIDER TO NOTE

THIS PREPAYMENT CHARGE RIDER TO NOTE is made this 17th day of April, 2003, and is incorporated into and shall be deemed to amend and supplement the Note or Adjustable Rate Note, as applicable (the "Note"), of the same date given by the undersigned Borrower(s) to Accredited Home Lenders, Inc., A California Corporation.

## NOTICE TO THE BORROWER

**DO NOT SIGN THIS PREPAYMENT CHARGE RIDER TO NOTE BEFORE YOU READ IT.   THIS PREPAYMENT CHARGE RIDER TO NOTE PROVIDES FOR THE PAYMENT OF A PENALTY IF YOU WISH TO REPAY THE NOTE PRIOR TO THE DATE PROVIDED FOR REPAYMENT IN THE NOTE.**

**The provisions of this Prepayment Charge Rider to Note are authorized by applicable state law or the federal Alternative Mortgage Transaction Parity Act of 1982, 12 U.S.C. §§ 3801 et seq.**

## PREPAYMENT CHARGE

I/we may make a full prepayment or partial prepayments.  However, if the aggregate amount of the prepayment(s) made during any twelve (12) month period within Thirty-six(36) months of the date of the Note exceeds twenty percent (20%) of the original principal amount of the Note, then as consideration for the acceptance of such prepayment(s), I/we agree to pay the holder of the Note a sum equal to six (6) months' interest on the amount by which such prepayment(s) exceed twenty percent (20%) of the original principal amount of the Note.  Any prepayments made after said initial Thirty-six (36) month period shall not be subject to any prepayment charge.


Borrower **SUSAN L.  BOURGEOIS**        Date          4-18-03

Borrower **CLIFFORD J.  BOURGEOIS**        Date          4-18-03

Borrower                                  Date

Borrower                                  Date

Borrower                                  Date

Borrower                                  Date

Borrower                                  Date

Borrower                                  Date

CA & HI - 5 yrs.
Silent states w/ or w/o Parity.
ppr-std.uff

BOURGEOIS                    0304072507

EXHIBIT "2"

Recorded Request Of
FIDELITY NATIONAL TITLE

Recording Requested By:
**Accredited Home Lenders, Inc.**
**A California Corporation**
Return To:
**Accredited Home Lenders, Inc.,**
**A California Corporation**
**15030 Avenue of Science, Suite 100**
**San Diego, CA 92128**

Prepared By:
**Accredited Home Lenders, Inc.**
**A California Corporation**

**DOC # 2003-0504618**

37111

APR 30, 2003 3:19 PM

OFFICIAL RECORDS
SAN DIEGO COUNTY RECORDER'S OFFICE
GREGORY J. SMITH, COUNTY RECORDER
FEES:        66.00

2003-0504618

146406-4

[Space Above This Line For Recording Data]

# DEED OF TRUST

MIN 100176103040725077

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

(A) "Security Instrument" means this document, which is dated April 17, 2003
together with all Riders to this document.
(B) "Borrower" is CLIFFORD J. BOURGEOIS AND SUSAN L. BOURGEOIS, HUSBAND AND
WIFE, AS JOINT TENANTS

Borrower's address is 1280 SHARI WAY
EL CAJON, CA 92019                    . Borrower is the trustor under this Security Instrument.
(C) "Lender" is Accredited Home Lenders, Inc.

Lender is a Corporation
organized and existing under the laws of State of: California

0304072507

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS        Form 3005  1/01

-6A(CA) (0207)
Page 1 of 15                    Initials:
VMP MORTGAGE FORMS - (800)521-7291

**37112**

Lender's address is 15030 Avenue of Science  #100
                    San Diego, CA 92128
(D) "Trustee" is FIDELITY NATIONAL TITLE COMPANY

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is
acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary
under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an
address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(F) "Note" means the promissory note signed by Borrower and dated April 17, 2003
The Note states that Borrower owes Lender one hundred fifty thousand and 00/100
                                                                          Dollars
(U.S. $150,000.00              ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than May 1, 2033
(G) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☒ Other(s) [specify] |
| | | Arbitration Rider |

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
(M) "Escrow Items" means those items that are described in Section 3.
(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.

Initials: _____                          0304072507
-6A(CA) (0207)                Page 2 of 18                          Form 3005  1/01

**37113**

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

County                    of                    SAN DIEGO                    :
[Type of Recording Jurisdiction]                              [Name of Recording Jurisdiction]

See Legal Description Addendum Page Attached

Parcel ID Number: 489-191-08                              which currently has the address of
1280 SHARI WAY                                                                [Street]
EL CAJON                                    [City], California 92019          [Zip Code]
("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances

(MERS) -6A(CA) (0207)                    Page 3 of 15          Initials:                    0304072507
                                                                                         Form 3005  1/01

**37114**

of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

Initials:

6A(CA) (0207)                    Page 4 of 15                    0304072507
                                                                 Form 3005  1/01

## 37115

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

-6A(CA) (0207)                          Page 5 of 15                    Initials: _____                0304072507
                                                                                               Form 3005  1/01

**37116**

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

Initials: _____

0304072507
Form 3005  1/01

-6A(CA) (0207)                    Page 6 of 15

Branch :F7I,User :TZ01                                    Comment:                                    Station Id :G21U

**37117**

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

-6A(CA) (0207)                           Page 7 of 15                    Initials:                0304072507
                                                                                                  Form 3005  1/01

37118

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

-6A(CA) (0207)                    Page 8 of 16         Initials: _____        0304072507

                                                                    Form 3005   1/01

**37119**

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

-6A(CA) (0207)                    Page 9 of 16                    Initials:                    0304072507
                                                                              Form 3005  1/01

## 37120

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

Initials: _____

0304072507

-6A(CA) (0207)                        Page 10 of 15                        Form 3005  1/01

# 37121

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check; bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

-6A(CA) (0207)                            Page 11 of 18              Initials:_____        0304072507
                                                                                            Form 3005  1/01

37122

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

Initials: _____                    0304072507

-6A(CA) (0207)              Page 12 of 15              Form 3005   1/01

**37123**

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. **Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

-6A(CA) (0207)                          Page 13 of 15              Initials                    0304072507
                                                                                              Form 3005   1/01

**37124**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____        _____ (Seal)
                                                    SUSAN L. BOURGEOIS            -Borrower

_____        _____ (Seal)
                                                    CLIFFORD J. BOURGEOIS         -Borrower

_____ (Seal)        _____ (Seal)
                          -Borrower                                             -Borrower

_____ (Seal)        _____ (Seal)
                          -Borrower                                             -Borrower

_____ (Seal)        _____ (Seal)
                          -Borrower                                             -Borrower

                                                            0304072507
-6A(CA) (0207)                    Page 14 of 15                Form 3005   1/01

Branch :F7I,User :TZ01                           Comment:                                    Station Id :G21U

37125

State of California
County of SAN DIEGO } ss.

On April 18, 2003 before me, JANE FOURNIER

personally appeared

SUSAN L. BOURGEOIS and CLIFFORD J. BOURGEOIS

, personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed
to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity
upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.



JANE FOURNIER
COMM. # 1254674
NOTARY PUBLIC-CALIFORNIA
SAN DIEGO COUNTY
My Comm. Exp. Mar 24, 2004

_____(Seal)

-6A(CA) (0207)                    Page 15 of 15              Initials_____        0304072507
                                                                                    Form 3005   1/01

SAN DIEGO,CA                          Page 15 of 20              Printed on 5/13/2014 10:55:11 AM
Document: TD 2003.504618

Branch :F7I,User :TZ01                    Comment:                                    Station Id :G21U

37126

**Legal Description Addendum**

Borrowers:  SUSAN L. BOURGEOIS and CLIFFORD J. BOURGEOIS

Loan Number: 0304072507

Property Address:  1280 SHARI WAY
                   EL CAJON, CA  92019

**Legal Description**
LOT 8 OF CAJON VILLAS UNIT NO. 3, IN THE CITY OF EL CAJON, COUNTY OF SAN
DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 4827, FILED IN THE
OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, AUGUST 11, 1961. EXCEPTING
THEREFROM ALL OILS, MINERALS, COALS, PETROLEUM, GAS AND KINDRED SUBSTANCES,
UNDER AND IN SAID LAND, BUT WITHOUT RIGHT OF ENTRY OF THE SURFACE THEREOF,
BUT WITH THE RIGHT HOWEVER, TO DRILL IN, THROUGH OR UNDER SAID LAND OR TO
EXPLORE, DEVELOP OR TAKE ALL MINERALS, COALS, OILS, PETROLEUM, GAS AND OTHER
KINDRED SUBSTANCES IN AND FROM SAID LAND ALL SUCH OPERATIONS TO BE CONDUCTED
ONLY BELOW A DEPTH OF 200 FEET BELOW THE SURFACE THEREOF.

610101.UFF

Branch :F7I,User :TZ01                    Comment:                    Station Id :G21U

## 37127

## ARBITRATION RIDER

This Arbitration Rider is signed as part of your Agreement with Lender or any assignee of Lender and is made a part of that Agreement. By signing this Arbitration Rider, you agree that either Lender or any assignee of Lender or you may request that any claim, dispute, or controversy (whether based upon contract; tort, intentional or otherwise; constitution; statute; common law; or equity and whether pre-existing, present or future), including initial claims, counter-claims, cross-claims and third party claims, arising from or relating to this Agreement or the relationships which result from this Agreement, including the validity or enforceability of this arbitration clause, any part thereof or the entire Agreement ("Claim"), shall be resolved, upon the election of Lender, any assignee of Lender or you, by binding arbitration pursuant to this arbitration provision and the applicable rules or procedures of the arbitration administrator selected at the time the Claim is filed. The party initiating the arbitration proceeding shall have the right to select one of the following three arbitration administrators: the National Arbitration Forum ("NAF"), the American Arbitration Association ("AAA") or JAMS ("JAMS"). The arbitrator shall be a lawyer with more than ten years experience or a retired or former judge. The arbitrator shall be independent of and unrelated to you or Lender or any assignee of Lender. The rules and forms of the NAF, AAA and JAMS may be obtained by writing to or calling these organizations at the addresses and/or telephone numbers listed below. Our address for service of process under this provision is the Lender's address as stated in page one of the Agreement or the address of any assignee of Lender.

Any participatory arbitration hearing that you attend will take place in the city nearest to your residence where a federal district court is located or at such other location as agreed by the parties.

If Lender or any assignee of Lender files a Claim, Lender or any assignee of Lender shall pay all filing costs. If you file a Claim, filing costs and administrative fees, (other than hearing fees) shall be paid as follows: (a) you agree to pay for the initial cost of filing the Claim up to the maximum amount of $100.00; (b) at your request or if required by the arbitration administrator's rules, we will pay for filing costs over $100.00 and for any administrative fees charged by the arbitration administrator on any Claim submitted by you up to a maximum of the amount of the filing fees that would be charged by the arbitration administrator for a Claim equal to your loan amount; and (c) all filing costs and/or administrative fees in excess of the amount of the filing fees that would be charged by the arbitration administrator for a Claim equal to your loan amount shall be paid by you. The cost of up to one full day of arbitration hearings will be shared equally between the parties. Fees for hearings that exceed one day will be paid by the requesting party. The parties shall each bear the expense of their respective attorney's fees, except as otherwise provided by law. If a statute gives you the right to recover any of these fees, or the fees paid to the arbitration administrator, these statutory rights shall apply in the arbitration notwithstanding anything to the contrary contained herein. If the arbitrator issues an award in our favor you will not be required to reimburse us for any fees we have previously paid to the arbitration administrator or for which we are responsible.

This Arbitration Rider is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act, 9 U.S.C. Sections 1 - 16 (the "FAA"). The arbitrator shall apply applicable substantive law consistent with the FAA, including laws concerning reception, rejection and consideration of evidence, and shall, at the request of any party, provide written reasoned findings of fact and conclusions of law. The arbitrator's award shall not be subject to appeal except as permitted by the FAA. The parties agree that the award shall be kept confidential. Judgment upon the award may be entered in any court having jurisdiction. All statutes of limitations that would otherwise be applicable shall apply to any arbitration proceeding.

The arbitrator shall be empowered to impose sanctions and to take such other actions as the arbitrator deems necessary to the same extent as could be imposed by a judge pursuant to the Federal Rules of Civil Procedure.

MIN #                                                                Loan #
10017610304072507?                    BOURGEOIS                    0304072507
                                        Page 1 of 3

SAN DIEGO,CA                    Page 17 of 20                    Printed on 5/13/2014 10:55:11 AM
Document: TD 2003.504618

Branch :F7I,User :TZ01                              Comment:                                      Station Id :G21U

**37128**

This Arbitration Rider shall survive repayment of your loan and/or termination of the Agreement.  If any portion of this Arbitration Rider is deemed invalid or unenforceable under any law or statute consistent with the FAA, it shall not invalidate the remaining portions of this Arbitration Rider of the Agreement.  In the event of a conflict or inconsistency between the rules and procedures of the arbitration administrator and this Arbitration Rider, this Arbitration Rider shall govern.  No class actions or joinder or consolidation of any Claim with the claim of any other person are permitted in arbitration without the written consent of the parties.

No provision of, nor the exercise of any rights under this Arbitration Rider shall limit the right of any party during the pendency of any Claim, to seek and use ancillary or preliminary remedies, judicial or otherwise, for the purposes of realizing upon, preserving, protecting or foreclosing upon any property involved in any Claim or subject to the loan documents. The use of the courts shall not constitute a waiver of the right of any party, including the plaintiff, to submit any Claim to arbitration nor render inapplicable the compulsory arbitration provisions contained in this Arbitration Rider.

THE PARTIES ACKNOWLEDGE THAT THEY HAD A RIGHT TO LITIGATE CLAIMS THROUGH A COURT BEFORE A JUDGE OR JURY, BUT WILL NOT HAVE THAT RIGHT IF EITHER PARTY ELECTS ARBITRATION.  THE PARTIES HEREBY KNOWINGLY AND VOLUNTARILY WAIVE THEIR RIGHTS TO LITIGATE SUCH CLAIMS IN A COURT BEFORE A JUDGE OR JURY UPON ELECTION OF ARBITRATION BY EITHER PARTY.  YOU ALSO ACKNOWLEDGE THAT YOU WILL NOT HAVE THE RIGHT TO PARTICIPATE AS A REPRESENTATIVE, CLAIMANT OR MEMBER OF ANY CLASS ACTION PERTAINING TO ANY CLAIM THAT IS SUBJECT TO ARBITRATION, EVEN IF SUCH CLASS ACTION IS PENDING ON THE DATE OF THIS ARBITRATION RIDER, EXCEPT THAT THIS ARBITRATION RIDER WILL NOT PRECLUDE YOUR PARTICIPATION IN A CLASS WHICH HAS ALREADY BEEN CERTIFIED BY A COURT OF COMPETENT JURISDICTION ON OR BEFORE THE DATE OF THIS ARBITRATION RIDER.

You may contact, obtain the arbitration rules of, or file a Claim with NAF, AAA, or JAMS as follows:

| National Arbitration Forum | American Arbitration Association | J.A.M.S./Endispute |
|---|---|---|
| P.O. Box 50191 | 1150 Connecticut Ave, NW, 6th | 45 Broadway |
| Minneapolis, MN 55405 | Floor | New York, NY 10005 |
| | Washington, DC 20036-4140 | |
| www.arb-forum.org | www.adr.org | www.jamsadr.com |
| Code of Procedure | Arbitration Rules for Consumer | Financial Services |
| | Related Disputes (Claims | Arbitration Rules and |
| | under $10,000). | Commercial |
| | Arbitration Rules | Procedures. |
| | (all other claims). | |

KIN #
10017610304072507?                          BOURGEOIS                          Loan #
                                          Page 2 of 3                          0304072507

37129

_Susan L. Bourgeois_   4-18-03
Borrower                        Date
SUSAN L. BOURGEOIS

_Cliff J Bourg_   4-18-03
Borrower                        Date
CLIFFORD J. BOURGEOIS

Borrower                        Date

Borrower                        Date

Borrower                        Date

Borrower                        Date

Borrower                        Date

Borrower                        Date

MIN #
1001761030460725077

BOURGEOIS
Page 3 of 3

Loan #
0304072507

SAN DIEGO,CA                    Page 19 of 20                    Printed on 5/13/2014 10:55:12 AM
Document: TD 2003.504618

**37130**

Order No. 03-1464064

## EXHIBIT "ONE"

Lot 8 of Cajon Villas Unit No. 3, in the City of El Cajon, County of San Diego, State of California, according to Map thereof No. 4827, filed in the Office of the County Recorder of San Diego County, August 11, 1961.

Excepting therefrom all oils, minerals, coals, petroleum, gas and kindred substances, under and in said land, but without right of entry of the surface thereof, but with the right however, to drill in, through or under said land or to explore, develop or take all minerals, coals, oils, petroleum, gas and other kindred substances in and from said land all such operations to be conducted only below a depth of 200 feet below the surface thereof.

Assessor's Parcel No: 489-191-08

2

EXHIBIT "3"

Branch :F7I,User :TZ01                 Comment:                                    Station Id :G21U

[RECORDING REQUESTED BY]
NATIONWIDE TITLE CLEARING
[AND WHEN RECORDED MAIL TO]
JPMorgan Chase Bank, NA
C/O NTC 2100 Alt. 19 North
Palm Harbor, FL 34683



DOC # 2011-0544788

OCT 17, 2011    4:22 PM
OFFICIAL RECORDS
SAN DIEGO COUNTY RECORDER'S OFFICE
Ernest J. Dronenburg, Jr., COUNTY RECORDER
FEES:        18.00                 DA:    1

Loan #: 16431603                                      PAGES:    1



9806

## CORPORATE ASSIGNMENT OF DEED OF TRUST

--- Contact JPMORGAN CHASE BANK, N.A. for this instrument 780 Kansas Lane, Suite A, Monroe, LA 71203, telephone # (866) 756-8747, which is responsible for receiving payments.

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") AS NOMINEE FOR ACCREDITED HOME LENDERS, INC., ITS SUCCESSORS AND ASSIGNS, (ASSIGNOR), (MERS Address: P.O. Box 2026, Flint, Michigan 48501-2026) by these presents does convey, grant, sell, assign, transfer and set over the described Deed of Trust together with the certain note(s) described therein, without recourse, representation or warranty, together with all right, title and interest secured thereby, all liens, and any rights due or to become due thereon to WELLS FARGO BANK, NATIONAL ASSOCIATION SUCCESSOR BY MERGER TO WELLS FARGO BANK MINNESOTA, NATIONAL ASSOCIATION, AS TRUSTEE FOR GSAMP TRUST 2003-HE2, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2003-HE2, WHOSE ADDRESS IS 700 KANSAS LANE, MC 8000, MONROE, LA 71203 (866)756-8747, ITS SUCCESSORS OR ASSIGNS, (ASSIGNEE).

Said Deed of Trust made by CLIFFORD J. BOURGEOIS AND SUSAN L. BOURGEOIS and recorded on 04/30/2003 as Instrument # 2003-0504618 in Book n/a, Page n/a in the office of the SAN DIEGO County Recorder, California.

Dated on 10 / 04 / 2011 (MM/DD/YYYY)
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") AS NOMINEE FOR ACCREDITED HOME LENDERS, INC., ITS SUCCESSORS AND ASSIGNS

By: _Tobias Bryant_    _Vice President_
Tobias Bryant

STATE OF LOUISIANA    PARISH OF OUACHITA
The foregoing instrument was acknowledged before me on 10 / 04 / 2011 (MM/DD/YYYY) by Tobias Bryant as Vice President of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") AS NOMINEE FOR ACCREDITED HOME LENDERS, INC., ITS SUCCESSORS AND ASSIGNS, who, being authorized to do so, executed the foregoing instrument for the purposes therein contained. He/she/they is (are) personally known to me or produced identification. Type of identification:_____



Angela Ruth Payne #60422
Notary Public - State of LOUISIANA
Commission expires: Upon My Death

ANGELA RUTH PAYNE
NOTARY
60422
PUBLIC
STATE OF LOUISIANA

Prepared By: E. Lance/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152
JPCAS 14797311 – CHASE DP3293314  MIN 100176103040725077 MERS PHONE 1-888-679-MERS FRMCA1

*14797311*

SAN DIEGO,CA
Document: AS 2011.544788                 Page 1 of 1                 Printed on 5/13/2014 10:55:12 AM

EXHIBIT "4"

RECORDING REQUESTED BY: *CHS*

WHEN RECORDED MAIL TO:

Western Progressive, LLC
2002 Summit Blvd, Suite 600
Atlanta, GA 30319
384372

Loan No.: 7100760797



DOC # 2012-0437124

JUL 27, 2012     8:00 AM
OFFICIAL RECORDS
SAN DIEGO COUNTY RECORDER'S OFFICE
Ernest J. Dronenburg, Jr., COUNTY RECORDER
FEES:          25.00

4118          PAGES:     3          DA:     1

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

### IMPORTANT NOTICE

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until approximately 90 days from the date this notice of default may be recorded (which date of recordation appears on this notice).

This amount is ___$20,147.05___ as of ___7/26/2012___, and will increase until your account becomes current. While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than three months after this notice of default is recorded) to, among other things. (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

**To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:**

Ocwen Loan Servicing, LLC Wells Fargo Bank, National Association, successor by merger to Wells Fargo Bank Minnesota, National Association, as Trustee for GSAMP Trust 2003-HE2 Mortgage Pass-Through Certificates, Series 2003-HE2, By Ocwen Loan Servicing, LLC, its attorney in-fact.
C/O Western Progressive, LLC
2002 Summit Blvd, Suite 600
Atlanta, GA 30319
Beneficiary Phone: 877-596-8580

4119

Loan No.: 7100760797                           TS No. 2012-21891

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure. **Remember, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.**

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

NOTICE IS HEREBY GIVEN: That **Western Progressive, LLC** is either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary under a Deed of Trust dated **4/17/2003**, executed by **CLIFFORD J. BOURGEOIS AND SUSAN L. BOURGEOIS, HUSBAND AND WIFE, AS JOINT TENANTS,** as Trustor, to secure certain obligations in favor of **ACCREDITED HOME LENDERS, INC., A CORPORATION, AS LENDER, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS BENEFICIARY,** recorded 4/30/2003, as Instrument No. 2003-0504618, in Book ---, Page ---, **and rerecorded on --- as ---** of Official Records in the Office of the Recorder of **San Diego County, California** describing land therein as: **As more particularly described on said Deed of Trust.**

The subject obligation includes **ONE NOTE(S) FOR THE ORIGINAL** sum of **$150,000.00.** A breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of the following:

**Installment of Principal and Interest plus impounds and/or advances which became due on 12/1/2011 plus late charges, and all subsequent installments of principal, interest, balloon payments, plus impounds and/or advances and late charges that become payable.**
**You are responsible to pay all payments and charges due under the terms and conditions of the loan documents which come due subsequent to the date of this notice, including, but not limited to, foreclosure trustee fees and costs, advances and late charges.**
**Furthermore, as a condition to bring your account in good standing, you must provide the undersigned with written proof that you are not in default on any senior encumbrance and provide proof of insurance.**
**Nothing in this notice of default should be construed as a waiver of any fees owing to the beneficiary under the deed of trust, pursuant to the terms and provisions of the loan documents.**

That by reason thereof, the present beneficiary under such deed of trust, has executed and delivered to said duly appointed Trustee, a written Declaration of Default and Demand for same, and has deposited with said duly appointed Trustee, such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

WE ARE ASSISTING THE BENEFICIARY TO COLLECT A DEBT AND ANY INFORMATION WE OBTAIN WILL BE USED FOR THE PURPOSE BY EITHER OURSELVES OR THE BENEFICIARY, WHETHER RECEIVED ORALLY OR IN WRITING. YOU MAY DISPUTE THE DEBT OR A PORTION THEREOF WITHIN THIRTY (30) DAYS. THEREAFTER WE WILL OBTAIN AND FORWARD TO YOU WRITTEN VERIFICATION THEREOF. SHOULD YOU NOT DO
SO, THE DEBT WILL BE CONSIDERED VALID. IN ADDITION, YOU MAY REQUEST THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR IF DIFFERENT FROM THE CURRENT ONE.

4120

**Attempts to contact the borrower have been unsuccessful.  No contact was made with the borrower despite the due diligence of beneficiary of their authorized agent's pursuant to California Civil Code 2923.5(g), including (a) mailing a first-class letter was sent to the borrower that included a toll-free contact number for the beneficiary as well as the toll-free telephone number for the United States Department of Housing and Urban Development (HUD) to find a HUD-certified housing counseling agency.  In addition, at least three attempts were made to contact the borrower by telephone, followed-up by a certified letter, return receipt requested.**

Dated: 7/26/2012

Western Progressive, LLC, as agent for beneficiary

David Cotton, Authorized Agent

EXHIBIT "5"

CLOSED

# U.S. District Court
## Southern District of California (San Diego)
### CIVIL DOCKET FOR CASE #: 3:15-cv-01655-GPC-BLM

Bourgeois v. Ocwen Loan Servicing, LLC et al      Date Filed: 07/24/2015
Assigned to: Judge Gonzalo P. Curiel      Date Terminated: 10/14/2015
Referred to: Magistrate Judge Barbara Lynn Major      Jury Demand: Plaintiff
Cause: 15:1692 Fair Debt Collection Act      Nature of Suit: 480 Consumer Credit
     Jurisdiction: Federal Question

**Plaintiff**

**Clifford J. Bourgeois**      represented by    **Clifford J. Bourgeois**
     6460 Convoy Ct., Spc 220
     San Diego, CA 92117
     858-229-6016
     PRO SE

V.

**Defendant**

**Ocwen Loan Servicing, LLC**      represented by    **Philip Barilovits**
     Hinshaw & Culberston, LLP
     One California Street
     18th Floor
     San Francisco, CA 94111
     (415) 362-6000
     Fax: (415) 834-9070
     Email: pbarilovits@hinshawlaw.com
     *LEAD ATTORNEY*
     *ATTORNEY TO BE NOTICED*

**Defendant**

**Ahmad Ansari**      represented by    **Philip Barilovits**
*Debt Collector, Ocwen Loan Servicing,*      (See above for address)
*LLC*      *LEAD ATTORNEY*
     *ATTORNEY TO BE NOTICED*

**Defendant**

**Amit Mishra**      represented by    **Philip Barilovits**
*Debt Collector, Ocwen Loan Servicing,*      (See above for address)
*LLC*      *LEAD ATTORNEY*
     *ATTORNEY TO BE NOTICED*

**Defendant**

**Tammy Versluis**                          represented by  **Philip Barilovits**
*Debt Collector, Ocwen Loan Servicing,*                    (See above for address)
*LLC*                                                       *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*

**Defendant**

**Western Progressive, LLC**                represented by  **Philip Barilovits**
                                                           (See above for address)
                                                           *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*

**Defendant**

**The Law Offices of Les Zieve**           represented by  **John C. Steele**
                                                           Law Offices of Les Zieve
                                                           30 Corporate Park
                                                           Suite 450
                                                           Irvine, CA 92606
                                                           (714)848-7920
                                                           Fax: (714)908-2615
                                                           Email: jsteele@pldlawyers.com
                                                           *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|------------|---|-------------|
| 07/24/2015 | 1 | COMPLAINT with Jury Demand against All Defendants ( Filing fee $400 receipt number CAS07457), filed by Clifford J. Bourgeois. (Attachments: # 1 Civil Cover Sheet)<br><br>The new case number is 3:15-cv-1655-GPC-BLM. Judge Gonzalo P. Curiel and Magistrate Judge Barbara Lynn Major are assigned to the case. (Bourgeois, Clifford)(dlg) (Entered: 07/24/2015) |
| 07/24/2015 | 2 | Summons Issued.<br>**Counsel receiving this notice electronically should print this summons and serve it in accordance with Rule 4, Fed.R.Civ.P and LR 4.1. Summons has been provided to plaintiffs not receiving notice electronically.** (dlg) (Entered: 07/24/2015) |
| 07/31/2015 | 3 | SUMMONS Returned Executed by Clifford J. Bourgeois. Western Progressive, LLC served. (srm) (Entered: 08/03/2015) |
| 07/31/2015 | 4 | SUMMONS Returned Executed by Clifford J. Bourgeois. The Law Offices of Les Zieve served. (srm) (Entered: 08/03/2015) |
| 07/31/2015 | 5 | SUMMONS Returned Executed by Clifford J. Bourgeois. Ocwen Loan Servicing, LLC served. (srm) (Entered: 08/03/2015) |
| 08/20/2015 | 6 | MOTION to Dismiss by Ahmad Ansari, Amit Mishra, Ocwen Loan Servicing, LLC, Tammy Versluis, Western Progressive, LLC. (Attachments: # 1 Memo of |

| | | |
|---|---|---|
| | | Points and Authorities)(Barilovits, Philip)Attorney Philip Barilovits added to party Ahmad Ansari(pty:dft), Attorney Philip Barilovits added to party Amit Mishra(pty:dft), Attorney Philip Barilovits added to party Ocwen Loan Servicing, LLC(pty:dft), Attorney Philip Barilovits added to party Tammy Versluis(pty:dft), Attorney Philip Barilovits added to party Western Progressive, LLC(pty:dft) (dlg). (Entered: 08/20/2015) |
| 08/21/2015 | 7 | ORDER Setting Briefing Schedule re 6 MOTION to Dismiss : Any opposition shall be filed on or before September 25, 2015. Any reply shall be filed on or before October 2, 2015. A hearing is set on October 16, 2015 at 1:30 p.m. in Courtroom 2D. Signed by Judge Gonzalo P. Curiel on 8/21/15.(All non-registered users served via U.S. Mail Service)(dlg) (Entered: 08/21/2015) |
| 08/26/2015 | 8 | MOTION to Dismiss *Plaintiff's Complaint, or, In the Alternative, For a More Definite Statement* by The Law Offices of Les Zieve. (Attachments: # 1 Memo of Points and Authorities)(Steele, John)Attorney John C. Steele added to party The Law Offices of Les Zieve(pty:dft) (dlg). (Entered: 08/26/2015) |
| 08/27/2015 | 9 | ORDER Setting Briefing Schedule re 8 MOTION to Dismiss *Plaintiff's Complaint, or, In the Alternative, For a More Definite Statement* : Any opposition shall be filed on or before September 25, 2015. Any reply shall be filed on or before October 2, 2015. A hearing is set on October 16, 2015 at 1:30 p.m. in Courtroom 2D. Signed by Judge Gonzalo P. Curiel on 8/27/15.(All non-registered users served via U.S. Mail Service)(dlg) (Entered: 08/28/2015) |
| 09/25/2015 | 10 | RESPONSE in Opposition re 6 MOTION to Dismiss , 8 MOTION to Dismiss *Plaintiff's Complaint, or, In the Alternative, For a More Definite Statement* filed by Clifford J. Bourgeois. (Attachments: # 1 Exhibits (Part 1 of 2), # 2 Exhibits (Part 2 of 2))(srm) (Entered: 09/28/2015) |
| 10/02/2015 | 11 | RESPONSE in Support re 8 MOTION to Dismiss *Plaintiff's Complaint, or, In the Alternative, For a More Definite Statement* filed by The Law Offices of Les Zieve. (Steele, John) QC email sent re incorrect filer. Attorney is to refile (dlg). (Entered: 10/02/2015) |
| 10/02/2015 | 12 | REPLY to Response to Motion re 6 MOTION to Dismiss filed by Ahmad Ansari, Amit Mishra, Ocwen Loan Servicing, LLC, Tammy Versluis, Western Progressive, LLC. (Barilovits, Philip) (dlg). (Entered: 10/02/2015) |
| 10/05/2015 | 13 | REPLY to Response to Motion re 8 MOTION to Dismiss *Plaintiff's Complaint, or, In the Alternative, For a More Definite Statement* filed by The Law Offices of Les Zieve. (Steele, John) (dlg). (Entered: 10/05/2015) |
| 10/14/2015 | 14 | ORDER Granting 6 , 8 Defendants' Motion to Dismiss: Plaintiff may file an amended complaint on or before November 4, 2015. The hearing set for October 16, 2015 shall be vacated. Signed by Judge Gonzalo P. Curiel on 10/14/15. (All non-registered users served via U.S. Mail Service)(dlg) (Entered: 10/14/2015) |
| 10/16/2015 | 15 | NOTICE by The Law Offices of Les Zieve *of Ruling Re: Motion to Dismiss Plaintiff's Complaint or, in the Alternative, For a More Definite Statement* (Steele, John) (dlg). (Entered: 10/16/2015) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 10/21/2015 18:44:41 | | |
| **PACER Login:** | wf0265new:2661496:0 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 3:15-cv-01655-GPC-BLM |
| **Billable Pages:** | 3 | **Cost:** | 0.30 |